All right, we'll call case 21-61-27 United States v. Diaz-Menera. Mr. Diaz was not personally involved in selling drugs, but the district court nonetheless applied the cross-reference at 2-1.181 on the grounds that he was accountable for neglecting the activities of others. This was a legal mistake because the cross-reference does not impose conspiratorial liability for the actions of other people. Two mutually reinforcing aspects of the guideline make this clear. First, the cross-reference implies only the defendant committed the underlying offense from which the funds were derived, which in a drug case is the actual sale of drugs. Second, the guideline limits relevant conduct to section A-1A of the relevant conduct guideline, which shows the intention to prohibit liability under A-1B. That is, it intended to prohibit liability for the conduct of other people, even if that conduct was reasonably perceivable and even if it was in furtherance of jointly undertaking criminal activity. To read the guideline as the district court did, to allow for the cross-reference based on mere membership in the conspiracy would nullify the limitation to relevant conduct under A-1A and essentially impose liability under A-1B, which the guideline deliberately omits. With the guideline properly construed, this is an easy case because Mr. Diaz was not personally involved in selling drugs. The cross-reference should not have been applied, and applying the cross-reference added several limits to this guideline range. But this was a drug conspiracy, I mean, that we're talking about conspiracy. Wasn't he at least aiding and abetting the conspiracy? Well, the judge, well, it would have to be aiding and abetting the drug distribution because that's the offense from which the drug conspiracy, I mean. Yes, but aiding and abetting, the judge made no findings about aiding and abetting, and it's a question of fact that the court would have to decide. And it can't be that mere membership in a conspiracy is necessarily aiding and abetting the completed offense. That is the objective of the conspiracy because otherwise there will be no need to separate out A-1A and A-1B in the guidelines. Finally, this court is- I mean, I guess the court made specific findings that he was essentially a member of the underlying conspiracy. There isn't any question about that, and you're not contesting those findings. We're not contesting those findings. But you're simply arguing that the underlying offense here under the guideline can't be the conspiracy itself? That's correct. Conspiracy- And why is that? Why can't it be the underlying? Because the guideline limits relevant conduct to A-1A. A-1B is conspiratorial liability. It's holding people accountable for the actions of others that are reasonably foreseeable and within the scope of their jointly undertaken criminal That's the very definition of conspiratorial liability. So by excluding A-1B, what the commission is saying is you only look at A-1A. And A-1A is you're a principal, you're an aider and abetter of the completed offense. Not mere membership in an agreement to commit an offense in the future, but an aider and abetter in the actual sale of drugs. So we don't have any at all from the district judge because it wasn't the government's argument below. The judge finds simply that he was a member of a conspiracy. And membership in a conspiracy, again, can't possibly be enough for the cross-reference to apply precisely because the guidelines exclude relevant conduct under A-1B. That has to be the commission's intent in excluding A-1B because A-1B is about conspiratorial liability. So council, council, the argument you made does seem to square with A-1A. But I'm just curious what the case law is. Just summarize for me the courts of appeals that have weighed in on this issue and they shake down. There have not been any court of appeals decisions that have weighed in on this question of whether mere conspiracy liability is enough. Presumably that's because probation officers don't apply this cross-reference in pre-sentence reports to people who don't have any involvement in the actual sale of drugs. If you look at the cases that involve this cross-reference, and they're not very many, they tend to be people who are drug users who are laundering money. The government points to two cases, one from the Fifth Circuit, one from the 11th. The Fifth Circuit case, though, was based on a holding that the defendant aided and abetted in the drug distribution, which pulls it under A-1A. The court mentions that the defendant was a member of a drug conspiracy, but its holding was that he aided and abetted drug distribution. There's a second case, the 11th Circuit case. This assumes without analysis that a membership in a conspiracy is enough because no one argued otherwise. And that assumption appeared to be based on a legal mistake because it says that the cross-reference applies if there's relevant conduct under 1B.1.3 without recognizing that section A.1.B of that guideline is excluded. So it seemed to assume that you just look to 1B.1.3, any relevant conduct is good enough but we know looking at the cross-reference that that's not the case. It limits relevant conduct to A-1A. So your point is that, well, you've answered my question that there is no circuit that has addressed that and I have reviewed those cases that were cited by the government and I tend to agree with you that they all involve cases, situations where the defendant had some actual conduct involved in the offense. But you're saying that reading A-1A and B together, B specifically covers conspiracy or jointly undertaking criminal activity. So A-1A has to be something different and it's clear it's something different because it addresses acts caused by the defendant. But it also says acts aided or abetted. And I am a little troubled by that language because aiding something by joining the conspiracy, it seems to me does aid that act. So I can understand your argument, but I have trouble with that aiding and abetting argument. Okay. Well, let me see if I can clarify that. The aiding and abetting is aiding and abetting the principal offense, which is the selling of drugs. So that's a different concept than aiding and abetting. But why doesn't somebody aid and abet illegal drug activity, specific sales of drugs, by participating in a conspiracy that does that? Or in this case, supporting that conspiracy by providing the usable proceeds from that? Well, I think certainly you could. I mean, it would depend on the facts of each individual case. And in this case, there's not any evidence that that's what was happening. I mean, district judge made a finding that the only money that was attributable to meth sales of the money that he was responsible for was the $99,000 in his backpack, which hadn't been found. And that finding is what brings this case directly under application note 2B, which says that the cross-reference doesn't apply if you mirrored laundered money after the fact with no involvement in the offense. I personally think that application note is maybe your very strongest argument. And I mentioned that only because I'd like to hear what the government has to say about that eventually. Right. I mean, the application note maps directly onto the court's findings in this case. The district court expressly found that there was no evidence that any of the prior money that was laundered was attributable to meth sales. So, you know, that's... District court specifically found not attributable to meth sales? That's right. Only the $99,000 that was found in his backpack when he arrested. Where did the district court specifically find that? I believe it's on page... Give me just a second here. On page 91 of the transcript volume, which is probably volume three. I mean, this is a quote. The government has presented no evidence that any of the $1.5 million remaining that Mr. Diaz-Monero admits to laundering was for the sale of methamphetamine. So based on that finding, that's the application. So basically what the drug does, he picks up money from drug sales that are already completed and goes to launder the money. That's precisely the situation described by this application note, which says if he laundered money after the fact with no involvement in the underlying offense that generated the funds, meaning the sale of drugs, then the prostitution system. But he's part of the conspiracy. He's part of this very large conspiracy for a significant period of time. He enlists family members. He's... I don't know that you could just say he had no involvement if the underlying offense is the conspiracy other than after the fact. He had involvement in the underlying offense of the conspiracy here. He was part of the conspiracy. He was a member of the conspiracy. Right. And our primary argument is that membership in the conspiracy isn't enough because relevant conduct is limited to A1A. There would need to be a finding of aiding and abetting liability, which has not been made. And it's a factual finding for the district court to make. And again, yes, he was involved. You say it was aiding and abetting argument was not made. Are you saying that there was responsibility for the charge to charge aiding and abetting or that can't be relied on by the But there needs to be a finding by the judge that there was in fact aiding and abetting for this cross-reference to apply. Instead, the judge applied the cross-reference based solely on the finding that he was a member of a conspiracy as a money creator, essentially. I haven't looked at the indictment, but did the indictment charge aiding and abetting as well as the conspiracy or just the conspiracy? No, it charged the charge was a money laundering conspiracy. It wasn't an aiding and abetting charge. And it charged that the money was derived from the drug conspiracy in the money laundering charge, which was the one he pled guilty to. It said the money was derived from the conspiracy and that he knew it was proceeds of some kind of unlawful. We have a case that specifically says that money laundering is not drug dealing. That's right. I haven't gotten to Morales yet, but I'm glad you pointed that out. I mean, that's a case that really illustrates this difference between aiding and abetting. He was an extensive money launderer for the organization. And this court found that he personally involved. It covers aiding and abetting liability. So I think that's the best piece that we have that really illustrates this distinction between membership and a conspiracy and aiding and abetting liability. That case predated the guideline 2S1.1. Morales predated the guideline. It was? Okay. But the 2S1.1A. It wasn't a 2S1.1A. It was about drug quantities. So it was a different context, but it was interpreting the same guideline, A1A. I mean, which is incorporated into 2S1.1. I see a lot of time. Thank you. Yes. Thank you. Good morning, and may it please the court, Nate Hoffman on behalf of the United States. As this court has noted under the clear air standard, battles over defendant status and scope of the criminal enterprise will almost always be one of loss. Here, the district court addressed Mr. Diaz-Monero's status in the scope of this enterprise. And because of that, it applied to 2S1.1A, what I'll refer to as the direct money guideline. That finding was far from clearly erroneous as Mr. Diaz-Monero, for the course of seven, eight months, laundered himself $1.5 million. It also led a team of money launderers all on behalf of a drug organization operating out of Michoacan, Mexico. Given this, as well as the government's concession that Mr. Diaz-Monero is in fact entitled to his third point of responsibility, we'd ask that the court affirm the district court's application of the money guideline provision and remand to the district court so that Mr. Diaz-Monero can be given that verdict. Now, Judge Seymour, I have a question about the indictment. The government says the government that they brought two conspiracies. They specifically indicted two conspiracies, a money laundering conspiracy and a drug dealing conspiracy. Is that correct? That is correct, Your Honor. And are both of those conspiracies still before us? I didn't catch that last part, Your Honor. I'm sorry. So you would support your arguments under both of those conspiracies even today, is that right? Well, the only offensive conviction we're dealing with here is the money laundering conspiracy. But I think as Judge Seymour pointed out, the underlying offense for the offensive conviction, the money laundering conviction, was in fact a drug conspiracy. Now, that's the ultimate question. If the underlying offense was the conspiracy, a drug conspiracy, you come out one way. If the underlying offense is the sale of drugs, you come out the other way. To me, that's almost a tipping point decision. Your Honor, I agree that I think the United States would have a much more difficult case if that money laundering conspiracy was not listed as the underlying offense. And I think that if it had not been, the district court probably would have had to make a finding that there was an aiding and abetting of drug distribution. But there's a fair bit of question during Mr. Diaz-Mera's argument about why the district court did not find that he aided or abetted drug use. Well, the reason that we didn't find, the district court wasn't asked to find that is because Mr. Diaz-Mera, at sentencing, he conceded that drug conspiracy could be an underlying offense. There are three different points in the record where he does so, pages 71 to 73, excuse me. But he says, quote, as the court noted, for A1 who applied, the defendant had to have committed the underlying offense. In this instance, distribution of drugs or conspiracy drugs. So a couple of points on that, Your Honor. For starters, it's a new argument. It's raised in his reply brief. He did not get a chance to respond to it. And secondly, it was basically invited air because what Mr. Diaz-Mera's point was, was yes. If you find that I'm a member of a drug conspiracy, then yes, the cross-reference applies. And the district court proceeded to make that analysis and found that he was in fact in a drug conspiracy. So the question for this court, it's not a question of de novo whether a drug conspiracy can serve as an underlying offense. And I point out that the reason that there aren't any cases really addressing this at Judge Prevelle is because where that comes from in terms of what can be an SUA for money laundering purposes, it comes from, of course, the money laundering statute, which references the RICO statute in 18 U.S.C. 1961. And the RICO statute says that basically any act, quote, otherwise dealing in a controlled substance or any act involving dealing in a SUA. So the idea that if you are agreeing with others to distribute drugs, that wouldn't qualify as a underlying offense for purposes of an SUA under the money laundering statute, that seems to get a cut against the plain language of a statute. So the question is whether the district court's finding that Mr. Diaz-Mera was in a drug conspiracy was clearly erroneous, and it was not. So you said that there were three times that the defendant conceded that the underlying action was the conspiracy. I don't want to take up your precious time to give us an actual cite in the record for those three times, but are you saying they're all in the brief or were they in an argument below or what? No, they were before. They were during the sentencing, your honor. I point you to volume three, page 71. The next page, and I read that verbatim. And then the next page, Mr. Diaz-Mera said, if the government cannot establish that Mr. Diaz was involved in this drug conspiracy, then the cross-reference wouldn't apply. And then again, the next page, page 73, where he again stated that A1 applies if, quote, the government can meet its burden that Mr. Diaz somehow participated in a drug conspiracy. So three different instances, your honor. And then Judge Nishman turned to the government. She asked me, well, was Mr. Diaz-Mera in a drug conspiracy? And I explained why he was in the court brief. And so the question again is whether that finding was clearly erroneous. And I think when you look at the facts for the court, it wasn't clearly. For the course of seven to eight months, Mr. Diaz-Mera is laundering, at least by his own admission, this is only the money that he himself laundered, $1.5 million. He's leading a team of individuals. He is, as we pointed out, Judge Moritz, recruiting these individuals. He's sending back money to Michoacan, Mexico. We know that what triggered this series of events on May 19 was the surveillance of a drug dealer who was being sourced out of Apatzingan, Michoacan. And then we know that based on the tested facts in the PSR, that that stash house where both the drug dealer I just mentioned as well as Mr. Diaz-Mera picked up the cash, that stash house is being occupied and one who sent a $920 wire transfer to Apatzingan, Michoacan. And the court pointed out in the sentencing hearing that she did not think it was a coincidence that Mr. Diaz-Mera was born and raised in Michoacan, that he was laundering money back to the same place where the source of supply resided. And so given all that, the court does not even need to address the question whether there needed to be a specific finding about aiding in that here, Mr. Diaz-Mera said that drug conspiracy was the underlying offense. And because it did that on three different instances, the district court made that evaluation just as Mr. Diaz-Mera, not in the way that Mr. Diaz-Mera wanted to report to, but the district court took up the very question that Mr. Diaz-Mera invited to address. And so- Different, I think you've at least satisfied me on those answers, but may I ask a different question? One of the conduct acts that seems to be alleged against the defendant was, quote, making false IDs. I'm a little unclear, were those IDs used for drug transactions, specific drug transactions, or were those IDs only to assist in his money laundering? The record's not clear, your honor, on what they would be used for. I can tell you that- Well, only answer, I only want your answer according to the record. I don't want you to tell me anything that's not in the record. The record does not address that. Thank you. Your honor, at the time, I would like to address the point that Mr. Diaz-Mera makes about that in the money laundering provisions, specifically keeping out A1B of the relevant criminal provisions somehow means that there can be no conspiratorial liability. Your honor, as you look at the way that A1B is written, it holds a co-conspirator liable for the actual omissions of others in the conspiracy. If it's within the scope of the jointly undertaken criminal activity, it's in furtherance of the criminal activity, and it was foreseeable to co-conspirator one. That is Pinkerton liability. So that would be indicated, for example, if we're somehow trying to hold Mr. Diaz-Mera liable for, for example, the $30,000 that his nephew, his 18-year-old nephew, admitted to wiring only a few days prior, if you converted that to methamphetamine and held him liable. If you were attempting to hold him liable for, for example, there was about 227 kilograms of methamphetamine that had passed through that stash house in the three to four weeks before Mr. Diaz-Mera showed up to get the money. If you can prove that those drug transactions were foreseeable to him, well, then you would be using the second prong of the relevant provision in order to hold him liable. But all the district court did here was find that, at a minimum, the $99,000 of money that he picked up from the liberty stash house, which was, in the district court's words, undisputed that it was from methamphetamine sales. That's all that Mr. Diaz-Mera was held liable for in this case. He didn't hold him liable for other funds that other people wired, didn't hold him liable for kilograms of drugs that were involved in this wide-ranging incident. So, in bottom, Your Honors, I think Mr. Diaz-Mera is trying to equate money launderers that actually touch the drugs, or I guess, there are money launderers that touch the drugs, and there are money launderers that don't touch the drugs. He's trying to equate all money launderers that don't touch the drugs as somehow being equally liable. So, for example, if a drug dealer goes to a money launderer and says, these are drug proceeds, and I need you to buy a vehicle and put it in your name, and the money launderer does that, and it's a one-time instance, I think there's a good argument that he's not involved in the underlying effects that produced it. Or even, I guess, closer to home, let's consider an owner of a wire emitter service that knows that cartel groups are frequently using their wire emitter services, frequently using fake ID services, Judge Abell, in order to wire money back. And these are, of course, different groups, and nothing is being done other than the wire emitter allowing them to send this money. I mean, that is an instance where you have somebody that's laundering money, but they're not involved in a money laundering conspiracy. And that, of course, is very, very different from what Mr. Diaz-Monera did here, where he is essentially, this is a compartmentalized drug conspiracy, but they often are. And the fact that you are in a, just one compartment of a drug conspiracy does not mean that you are not in a drug conspiracy. In fact, I'd submit that the reason that these organizations are successful is because of their attention to detail and compartmentalization. At bottom, your honors, the question is whether Mr. Diaz-Monera was in a conspiracy. The district court found that he was, and because that finding is not clearly erroneous, we doubt you affirm the district court's application of the money guy language. Did the district court say there was two conspiracies, a conspiracy to money launder and a conspiracy to actually sell drugs? Or did the district court say there was just one conspiracy with two purposes, to money launder, to aid the purpose of selling drugs? Robert, seem to hint, I point you to page 123 of volume. It notes that it's discussing the Diaz-Monera's offense. And it says that his money laundering activities was quote, essential and important role for this type of organization, which seemed to be referring to a drug organization. I'd also point out earlier in the record, page 62, volume three, Mr. Diaz-Monera's counsel essentially conceded that they was all one part of the same enterprise. When he said the way that these drug drafting enterprises work and money laundering enterprises work is not hurting somebody and having them go immediately pick up $100,000. You get more money if you build trust and you show you can do the job. So he seems to recognize the money laundering component is but one part of this wide ranging conspiracy. Thank you. Thank you, counsel. I'd like to briefly address this invited error argument that's being made for the first time at oral argument. You know, I don't dispute anything Mr. Coffey said about what is in the record. Defense counsel said a lot of things that were kind of inconsistent. But his bottom line was that A1A, you know, A1A, the only relevant conduct you can consider, not A1B, which is the same argument that we're making on appeal. A1B is conspiratorial liability. It's liability for others that are taken in further in some criminal activity. And he's telling the court that that relevant kind of provision doesn't apply. But even if you were inclined to view this as an invited error case, it's, you know, this is raised for the first time at oral argument. So it's been waived. And if you agree with the government's concession about the breach of the agreement, this is going back to resentencing anyway. So there's really no reason why this mistake shouldn't be fixed. This isn't a case where we're asking for a kind of relief beyond what we'd be granting anyway, based on the conceded issue. My understanding is he was arguing the invited error based on what the government says you didn't argue until your reply brief. So this would be the point where they could argue. Yes, it would be if that were the case, but it's not. I mean, our argument in our brief was that the offense for which the which is conspiratorial. Our argument hasn't shifted at all. I mean, we replied to what the government argued, but it's been the same argument all along. Nothing has changed. And another point on the invite, almost out of time, is that the application note argument, which I know is kind of bound up and everything else, defense counsel made that argument very clearly. He pointed to the application note as a basis for why the cross-reference wouldn't apply and argued that only the $99,000 in the backpack was proven to be attributable to mass sales. It just recorded that finding, which is the finding that makes this application directly applicable. Thank you, counsel. We appreciate both your arguments and very good and helpful. It's been a council excuse.